United States District Court
Southern District of Texas
**ENTERED**
August 02, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RSM PRODUCTION CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-03611 |
| | § | |
| GAZ DU CAMEROUN, S.A., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

This is a case involving an arbitration award issued in favor of Plaintiff RSM Production Corporation ("RSM") against Defendant Gaz du Cameroun, S.A. ("GdC"). A dispute arose between RSM and GdC after they undertook a joint venture in a West African natural gas project. Pursuant to their contract, the Parties arbitrated their disputes to completion before a panel of arbitrators (the "Tribunal"). RSM now seeks to partially vacate the Tribunal's award, and GdC contends that this case should be dismissed because GdC is not subject to the personal jurisdiction of this Court.

Pending before the Court is GdC's Motion to Dismiss for Lack of Personal Jurisdiction, (Dkt. No. 16). For the following reasons, the Court **DENIES** the Motion.

I.      **BACKGROUND**[1]

RSM, a Texas corporation with its principal place of business in Colorado, and GdC, a British Virgin Islands corporation, entered into multiple contracts in connection

_____

[1]      For purposes of this Motion, the Court accepts as true all factual allegations by the party seeking to assert personal jurisdiction, and resolves all conflicts in that party's favor. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

with a natural gas production and distribution project in Cameroon, West Africa.  (Dkt. No. 1 at 1–2).  A dispute arose over the project's payment plan, and the parties arbitrated their claims to completion over a period of more than three years.  (Dkt. No. 24 at 7).  In accordance with their arbitration clause, the arbitration was conducted in Houston, Texas, and governed by Texas law.  (Dkt. No. 1 at 1).  RSM brings the present action seeking to partially vacate and partially confirm the arbitration award, alleging that the Tribunal committed legal error resulting in the improper reduction of its recovery by more than $4 million.  (*Id.* at 9–11).

In lieu of defending the validity of the Tribunal's decision, GdC moves to dismiss for lack of personal jurisdiction.  (*See generally* Dkt. No. 16).  GdC asserts that it does not have "minimum contacts" with Texas, and that an agreement to arbitrate in a particular state does not permit the courts of that state to exercise personal jurisdiction beyond the limited purpose of compelling arbitration.  (*Id.* at 1–4).  With briefing complete, the Motion is ripe for review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court cannot assert personal jurisdiction over the defendant.  Generally, the party seeking to assert jurisdiction has the burden of making a *prima facie* showing of jurisdiction.  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

A federal court sitting in diversity may assert personal jurisdiction over a non-resident defendant when the exercise of jurisdiction complies with the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment.  *Johnston v. Multidata*

*Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis."  *Id.*  Federal due process affords jurisdiction over a non-resident defendant who has established minimum contacts with the forum state such that imposing a judgment does not offend traditional notions of fair play and substantial justice.  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

"Minimum contacts can give rise to either specific jurisdiction or general jurisdiction."  *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (internal quotation marks omitted)).  Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."  *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).  It is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (internal quotation marks omitted).  On the other hand, general jurisdiction exists when a non-resident defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Id.* (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

## III.    DISCUSSION

In the present case, the Parties do not dispute the jurisdictional facts or that GdC is not subject to general personal jurisdiction.  Instead, they only disagree as to whether there is specific, personal jurisdiction.  RSM is a Texas corporation with its principal place of business in Colorado, and GdC is a British Virgin Islands corporation.  (Dkt. No. 1 at 1).  The multiple agreements between RSM and GdC each concerned their joint venture in a natural gas project in Cameroon.  (*Id.* at 2).  According to RSM, personal jurisdiction requirements are met "because the arbitration agreements between the parties select Houston, Texas as the place of arbitration, and because the arbitration that gives rise to this lawsuit took place in Houston, Texas[,]" and the parties agreed that the contracts "are to be governed by the substantive law of Texas[.]"  (*Id.* at 1, 3).  GdC downplays the significance of RSM's jurisdictional facts, arguing that a non-resident defendant's agreement to arbitrate in a particular state does not establish personal jurisdiction over that defendant except for the limited purpose of compelling arbitration.  (Dkt. No. 16 at 2).  GdC argues that an action to vacate an arbitration award "is governed by the 'normal rules' for personal jurisdiction, i.e., the minimum contacts test[,]" which RSM cannot satisfy.  (*Id.* at 4).

In ultimately holding that there is specific personal jurisdiction over GdC, the Court will first undergo the minimum contacts inquiry, and then evaluate considerations of fair play and substantial justice.

A.   MINIMUM CONTACTS

In asserting that there are insufficient minimum contacts between GdC and the State of Texas, GdC's primary argument is that when it comes to agreements to arbitrate in a particular state, the Fifth Circuit has only permitted personal jurisdiction for the limited purpose of compelling arbitration.  (Dkt. No. 16 at 2).  GdC claims that "[n]o decision of the Fifth Circuit, or indeed any federal or state court in Texas," has extended personal jurisdiction beyond that limited purpose.  (*Id.*).  As to whether an agreement to arbitrate in a particular state confers personal jurisdiction to vacate an arbitration award, GdC says that the question has not been addressed by the Fifth Circuit or any district therein.  (Dkt. No. 27 at 1).

It is true that a line of Fifth Circuit cases has held that a defendant's agreement to arbitrate in Texas does not necessarily constitute consent to personal jurisdiction beyond the limited purpose of compelling arbitration.  *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016).  But while an agreement to arbitrate does not alone "necessarily provide minimum contacts with the arbitration forum[,]" *Halliburton*, 921 F.3d at 541, RSM does not merely plead that the parties agreed to arbitrate in Houston, Texas, but also that both sides agreed that the contracts would be governed by Texas law.  (Dkt. No. 1 at 1, 3).  The Supreme Court and the Fifth Circuit have found the presence of choice-of-law provisions to be particularly probative for jurisdictional purposes, as they reinforce the defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation

5

there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985); *see also Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012).

In determining whether there is personal jurisdiction in the context of arbitration clauses, the Fifth Circuit has consistently looked to the parties' stipulations as to the substantive law governing any dispute, as well as the location of arbitration, finding this "[p]erhaps most significant[]" in the inquiry. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (no specific personal jurisdiction in U.S. federal court where the parties stipulated to "mandatory arbitration in Russia, under Russian law[,]" which "suggest[s] that [the defendant] meant for the undertaking to remain wholly Russian in nature"); *see also Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (per curiam) (no specific personal jurisdiction in U.S. federal court where the contract at issue contained clauses providing for Swedish arbitration according to Norwegian law); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (no specific personal jurisdiction in U.S. federal court where the contract at issue contained clauses providing for arbitration under English law).

Here, unlike those cases where the forum of the lawsuit did not match the stipulated arbitration location and governing law, GdC entered into contracts expressly providing for arbitration in Texas and under Texas law. By doing so, GdC has "purposefully availed [itself] of the benefits and protections of [Texas's] laws[.]" *See Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187 (internal quotations omitted). In an analogous case, the district court found sufficient minimal contacts where the contracts

specifically invoked Texas law as the governing law, pointed to dispute resolution in Texas, and involved a Texas-based entity. *See Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-00042, 2022 WL 3704537, at *9–10 (E.D. Tex. Aug. 26, 2022). Similarly, another district court held that "[t]he combination of choosing Texas law and designating Texas as the arbitration forum . . . support[s] a finding that [the defendant] anticipated and foresaw further contacts with Texas." *Gateway Logistics Grp., Inc. v. Dangerous Goods Mgmt. Australia Party, Ltd.*, No. 4:05-CV-02742, 2006 U.S. DIST. LEXIS 34931, at *20 (S.D. Tex. May 31, 2006).

Furthermore, it is true that merely contracting with a resident of the forum state, standing alone, is insufficient to subject the non-resident to the forum's jurisdiction. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004). But that does not mean that whether there has been "an ongoing business relationship with a Texas resident" is not a consideration in determining whether the defendant's connection with the forum was a fortuitous connection versus a purposeful availment. *See Latshaw v. Johnston*, 167 F.3d 208, 213 (5th Cir. 1999) (giving weight to the fact that the defendant "entered into an ongoing business relationship with a Texas resident (and his company) and made multiple trips and phone calls to Texas in furtherance of that relationship"). Here, it is relevant that GdC knowingly entered into a multi-year contract with a Texas corporation. It cannot be said that GdC had not availed itself of the privilege of conducting activities within Texas, or that it could not have anticipated being "hailed into court" in Texas, when it entered into a long-term contract with a Texas corporation that

was to be governed by Texas law and arbitrated in Texas.  *See Elevacity*, 2022 WL 3704537 at *8–10.

In sum, this case involves a contract wherein one party is a Texas corporation, the contract is governed by Texas law, and the parties agreed to arbitrate in Texas.  While perhaps any one of these taken alone might be lacking, taken together, they sufficiently "indicate[] what future consequences [GdC] should have contemplated when it contracted with [RSM]."  *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 206 (5th Cir. 1996).  RSM has therefore shown that GdC has minimum contacts with Texas for purposes of establishing specific personal jurisdiction.

### B.    TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Once a plaintiff has established minimum contacts, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185. The Fifth Circuit has explained that "[i]n determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies."  *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003) (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184).

GdC has not identified any reason that the exercise of jurisdiction in Texas would be unreasonable, and none are readily apparent. Nothing suggests that travel to Texas for trial would be impracticable, and in fact GdC's counsel, based in Denver, has previously made an in-person appearance. (*See* Dkt. No. 19). This case involves a Texas plaintiff, thus implicating the interests of the forum state. *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). And this case is governed by Texas law, so the interests of efficient interstate judicial administration also support a finding of jurisdiction.

In sum, because RSM has shown that there are sufficient minimum contacts between GdC and the State of Texas, and personal jurisdiction over GdC in this case would not otherwise be fundamentally unfair so as to offend notions of fair play and substantial justice, the Court finds that it has personal jurisdiction over GdC.

## IV.    CONCLUSION

In light of the foregoing, the Court **DENIES** GdC's Motion to Dismiss for Lack of Personal Jurisdiction. (Dkt. No. 16).

In accordance with the Amended Management Order entered by Judge Lynn N. Hughes before this case was reassigned, (*see* Dkt. No. 23), the Parties may proceed to fully brief the merits of RSM's Motion to Partially Vacate and Partially Confirm Arbitration Award, (Dkt. No. 2). GdC's Response is due within 14 days of this Order, and RSM's Reply is due 14 days after service of GdC's Response. (*See* Dkt. No. 23).

It is SO ORDERED.

Signed on August 1, 2023.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE