United States District Court
Southern District of Texas
**ENTERED**
November 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RSM PRODUCTION CORP.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-03611 |
| | § | |
| **GAZ DU CAMEROUN, S.A.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This case centers on an arbitration award issued in favor of Plaintiff RSM Production Corporation ("RSM") against Defendant Gaz du Cameroun, S.A. ("GdC"). While RSM prevailed in arbitration, it seeks to vacate the Tribunal's modification of the award, which lowered what was originally a $10,578,123.28 award to $6,566,497.38. GdC previously filed a Motion to Dismiss for Lack of Personal Jurisdiction, (Dkt. No. 16), which this Court denied, (Dkt. No. 29). The Court now turns to the merits of RSM's Motion to Partially Vacate and Partially Confirm Arbitration Award, (Dkt. No. 2). After careful consideration, the Motion is **GRANTED**.

### I.  BACKGROUND[1]

RSM and GdC entered into a contract in connection with a natural gas production and distribution project. (Dkt. No. 1 at 2). A dispute formed over the timing of when RSM was entitled to receive payment. (*Id*. at 4). RSM argued that GdC had claimed costs

---

[1] The Court makes the following factual findings for the sole purpose of this Memorandum Opinion and Order.

that it should not have. (*Id.*). RSM states that that the payout date was supposed to be February 1, 2016, but that GdC's improper inclusion of additional costs artificially delayed payout until June 1, 2016, thereby decreasing RSM's cut of the production. (*Id.*). In accordance with their contractually agreed-upon arbitration clause, the Parties arbitrated their multiple accounting and breach-of-contract disputes before a Tribunal of three arbitrators in accordance with the International Chamber of Commerce ("ICC") Rules. (*Id.* at 3–4). The Tribunal ruled in RSM's favor on most claims, including a finding that GdC had wrongfully included certain royalties in its expenses. (Dkt. No. 4-1 at 56). RSM was awarded $10,578,123.28. (*Id.*).

After the Partial Final Award was issued, the Parties jointly applied to correct two errors that resulted in a net increase of $47,710 to RSM, and the Tribunal agreed and made these corrections.[2] (Dkt. No. 4-8 at 8–9). However, GdC also separately filed a contested Rule 36 "Application to Correct Award and Address Omitted Claims." (Dkt. No. 4-5). After briefing and oral argument, the Tribunal agreed with GdC that it had miscalculated RSM's damages, and reduced RSM's recovery by more than $4 million. (Dkt. No. 4-8 at 20). The Tribunal issued a revised Addendum Award, citing its authority to correct "computational" errors. (*Id.* at 16–18).

RSM now requests that the Court vacate the portion of the Addendum Award that reduced its recovery by roughly $4 million and confirm the remaining portions of the

---

[2] The Parties agreed that RSM was entitled to an additional $200,000 as the prevailing party, and that $152,290 previously paid to RSM by GdC in the form of an overriding royalty should be deducted from the damages. (Dkt. No. 4-8 at 9). These agreements resulted in a net increase of $47,710. (*See id.*).

2

Addendum Award and Partial Final Award. (Dkt. No. 2 at 28). RSM argues that the arbitrators exceeded their power under the Federal Arbitration Act ("FAA"), namely their power to correct computational errors, and impermissibly "conduct[ed] [a] do-over[] of their substantive relief or reasoning." (*Id.* at 18); (*see generally id.* at 15–26). In response, GdC argues that judicial review of the Tribunal's decision is very limited, and this case is no exception, because it simply corrected a computational error when issuing the Addendum Award. (*See* Dkt. No. 33 at 11–17). With briefing complete, the Court turns to the merits of the Motion.

II.  **LEGAL STANDARD**

"In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). Indeed, this standard has been described as "one of the most deferential standards known to the law." *Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822, 826 (5th Cir. 2020) (cleaned up). Vacatur of an arbitration award cannot be based on the merits of the award, even if it is shown that the arbitrator committed a "serious error." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013). "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (internal quotations omitted); *see id.* at 572–73, 133 S.Ct. at 2070–71 (explaining that "an arbitrator's error—

even his grave error—is not enough" and that "the price for agreeing to arbitration" is that "[t]he arbitrator's construction holds, however good, bad, or ugly").

Section 10 of the FAA "provides 'the only grounds upon which a reviewing court may vacate an arbitrative award.'" *Rain CII Carbon*, 674 F.3d at 472 (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)); *see also* 9 U.S.C. § 10. An award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). When a party seeks to vacate an arbitration award, that party bears the burden of proving that one of these grounds applies, and "any doubts or uncertainties must be resolved in favor of upholding [the award]." *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016).

## III. DISCUSSION

RSM primarily argues (1) that the Tribunal impermissibly revisited the merits of the arbitration award after the award was issued, and (2) that this renewed process was not the type of "computational error" that the Tribunal was permitted to fix. (*See* Dkt.

4

No. 2 at 17–26). These two points are closely intertwined, so the Court will consider them before turning to the remaining portions of the Partial Final Award.

### A. THE PARTIAL FINAL AWARD AND ADDENDUM AWARD

The Court will first summarize the relevant dispute and the Tribunal's two rulings. The Court begins by outlining RSM's claims against GdC relevant to this Motion before turning to the Tribunal's holdings on those claims.

#### 1. RSM's Claims 1–3 Against GdC

RSM and GdC entered into multiple agreements with respect to a natural gas production and distribution project. (Dkt. No. 2 at 7). Under those agreements, GdC was the operator of the project and advanced the costs for the project's first two wells. (*Id.*). The Parties stipulated that for GdC's services, RSM would assign GdC a 60% participating interest, retaining 40% for itself. (*Id.*). Once the wells began to produce, GdC was entitled to recuperate 100% of their costs before RSM was entitled to begin receiving its 40% share. (*Id.*). While the contractual dispute and arbitration involved a litany of claims,[3] the present Motion only concerns RSM's Claim Nos. 1, 2, and 3, as labeled by the Tribunal, and focuses on the Tribunal's resolution of the question of *when* RSM was entitled to begin receiving its 40% share, and the amount of damages to which RSM is accordingly due.

The Parties' agreement provided that payout would occur "on the first day of the calendar month following the calendar month in which [GdC recovered 100% of their

---

[3] In total, RSM asserted twenty-three claims, and GdC asserted three counterclaims. (*See* Dkt. No. 4-1 at 7–11).

costs]." (Dkt. No. 4-1 at 41). As GdC would have it, GdC did not fully recover its costs until some time in May 2016, which would mean a payout date of June 1, 2016. (*Id.* at 43). RSM contended that GdC fully recovered its costs in January 2016, which would mean that payout should have occurred on February 1, 2016, and RSM should have received revenue from that date through May 31, 2016. (*Id.* at 41). RSM alleged that GdC entered into a Royalty Agreement (the "CHL Royalty Agreement") with another company, adding over $8 million of costs which, according to RSM, should not have been treated as recoverable. (*Id.*). RSM asserted that GdC employed this tactic to artificially delay the date for which GdC is considered to have fully recovered its costs, and this maneuver cost RSM its rightful share of $10,578,123.28. (*Id.*).

Albeit technical, the breakdown of RSM's claimed $10,578,123.28 bears on the resolution of this case. As RSM explains it, that amount "is derived in three steps." (Dkt. No. 4-2 at 18). First, the bulk of the $10,578,123.28 is revenue accrued from February 1, 2016, through May 31, 2016; this period's total revenue was $16,416,243.46, which means RSM's 40% is $6,566,497.38. (*Id.*). Second, RSM claimed that it was also entitled to sales proceeds received on or after February 1, 2016, for petroleum delivered prior to that date; the revenue for this totaled $9,666,541.74, meaning RSM's 40% is $3,866,616.70. (*Id.* at 18–19). And third, RSM claimed that it was also entitled to sales proceeds received by GdC between the date in January 2016 when GdC achieved full cost recovery and February 1, 2016. (*Id.*). This amount totaled $362,523.00, meaning RSM's 40% is $145,009.20. (*Id.* at 19).

6

RSM asserted its claim to the $10,578,123.28 based on the above three-part breakdown, which the Tribunal categorized as "RSM Claim No. 1: GdC's Inclusion of the CHL Royalty in the Calculation of 'Payout.'" (Dkt. No. 4-1 at 40). In the alternative, RSM argued that it still would have been underpaid even if the Tribunal held that the payout date was not improperly delayed. (*Id.* at 61). These claims, which the Tribunal categorized as "RSM Claim Nos. 2 and 3," are essentially the same as RSM's arguments in Claim No. 1 with respect to its second and third steps of its three-step damages calculation concerning the pre- and post-payout proceeds. (*See id.*). In Claim Nos. 2 and 3, RSM argued that even if the Tribunal found that the payout date was not improperly delayed—i.e., that the June 1, 2016, date was proper—RSM would still be under-credited because it was entitled to: (1) sales proceeds received on or after June 1, 2016, for petroleum delivered prior to that date, and (2) sales proceeds received by GdC between the date in May 2016 that GdC achieved full cost recovery and June 1, 2016. (*Id.*).

### 2.     The Tribunal's (Two) Rulings

The Court first summarizes the Tribunal's initial decision and the Partial Final Award before turning to the Addendum Award.

#### a.     The Partial Final Award

In its initial Partial Final Award, the Tribunal ruled in favor of RSM as to Claim No. 1, finding that GdC "wrongfully included the CHL Royalty in its Payment calculation[.]" (Dkt. No. 4-1 at 56). As a result, RSM was awarded $10,578,123.28. (*Id.*). But recall, the inclusion of the CHL Royalty delayed the payout date from February 1, 2016, to June 1, 2016. The revenue that accrued from February 1, 2016, through May 31,

2016, was $6,566,497.38, not $10,578,123.28. The two other demands, however,—(1) for revenue accrued but not received prior to February 1, 2016, and (2) revenue received between the full cost recovery date in January 2016, and February 1, 2016—would bring GdC's liabilities on this claim to $10,578,123.28.

Although the Tribunal's decision on Claim No. 1 awarded RSM $10,567,123.28 ostensibly based on its determination "that the CHL royalty should not have been included in the calculation of Payout[,]" (Dkt. No. 4-1 at 56), the decision later explicitly endorsed RSM's two other unpaid revenue percentages. (*See id.* at 60–61) ("As explained by RSM, and as adopted by the Tribunal, this process is accomplished *in three steps* . . .") (emphasis added). On the revenue accrued but not received prior to February 1, 2016, the Tribunal wrote that "in accord with Article 3.5 of the Farmin Agreement, the Joint Account should be credited with sales proceeds received from February 1, 2016 for petroleum that was delivered prior to February 1, 2016." (*Id.* at 60). The Tribunal listed the calculations and explained that RSM's 40% share was $3,866,616.70. (*Id.* at 60–61). Then, the Tribunal endorsed the third and final component of RSM's calculations, explaining that "the Joint Account must be credited for sales proceeds received in January 2016 after GdC achieved 100% cost-recovery, but before the February 1, 2016 date of Payout," which amounts to $145,009.20. (*Id.* at 61).

The Tribunal ruled fully in RSM's favor on Claim No. 1, including that the payout date should have been February 1, 2016, instead of June 1, 2016. Then, the Tribunal found Claim Nos. 2 and 3 to be moot because they were based on the alternative possibility,

8

which did not occur, that the Tribunal would deem June 1, 2016, the proper payout date. (*Id.*).

### b. The Addendum Award

On the heels of the Partial Final Award, GdC filed an ICC Rule 36 application requesting that the Tribunal correct the amount awarded on RSM's Claim No. 1 and decide Claim Nos. 2 and 3 because they were not moot. (Dkt. No. 4-5 at 3). GdC did not challenge the Tribunal's holding that GdC should not have included the CHL Royalty in its payout calculation, and that February 1, 2016, was the proper payout date. (*Id.*). Rather, GdC argued that the Tribunal erred by including damages for claims related to revenue on production that occurred prior to payout despite the fact that RSM only prevailed in the Partial Final Award with respect to the improper inclusion of the CHL Royalty. (*See id.* at 3–6). GdC asserted that by doing so, the Tribunal erroneously factored into the award two calculations "which the Tribunal did not address," and GdC implored the Tribunal to "address and decide" those calculations, which GdC argued were "not moot." (*Id.* at 3).

The Tribunal agreed with GdC, finding that the Tribunal had authority to address computational errors before holding that it "miscalculate[ed] the appropriate relief due to RSM in respect of its Claim No. 1." (*See* Dkt. No. 4-8 at 16–18). With minimal discussion, the Tribunal concluded that it erred "by factoring two calculations that the claim did not encompass[.]" (*Id.* at 18). The Tribunal then reasoned that the correction to Claim No. 1 "raises the matter of a proper resolution of RSM's Claim Nos. 2 and 3." (*Id.* at 19). Finally, the Tribunal concluded that "to the extent that [the computational

9

error in Claim No. 1] incorporates Claim Nos. 2 and 3, the Tribunal corrects that error and finds that GdC prevails as to Claim Nos. 2 and 3." (*Id.* at 20). The Tribunal accordingly reduced the amount awarded to RSM under Claim No. 1 from the original $10,578,123.28 to $6,566,497.38. (*Id.* at 21).

### B.   SETTING ASIDE AN AWARD UNDER SECTION 10(a)(4)

Under the common law doctrine of *functus officio*, an arbitrator is barred from revisiting the merits of an award once the award has been issued. *See Brown v. Witco Corp.*, 340 F.3d 209, 218 (5th Cir. 2003) (citing *Bayne v. Morris*, 68 U.S. (1 Wall.) 97, 99, 17 L.Ed. 495 (1863)). However, the FAA provides four statutory bases upon which an arbitration award may be vacated. *See* 9 U.S.C. § 10(a); *supra* Part II (reciting the four bases). RSM contests the Addendum Award on the basis that it violates 9 U.S.C. § 10(a)(4), which provides, in relevant part, that an arbitration award may be vacated "where the arbitrators exceeded their powers[.]" (*See* Dkt. No. 2 at 15–17). RSM asserts that the 2017 ICC Rules, which governed the arbitration in this case, grant arbitrators only the power to correct "a clerical, computational, or typographical error, or any errors of similar nature contained in an award."[4] (*Id.* at 18); *see* 2017 ICC Art. 36(1). According to RSM, appropriate exercise of this power includes, for example, an inadvertent omission of the word "not" or an accidental use of a period instead of a comma to separate numeric digits. (Dkt. No. 2 at 18). GdC responds that the Addendum Award is also subject to the

---

[4] The Parties do not argue that there were any alternative avenues for the Tribunal to modify its otherwise final ruling. (*See* Dkt. Nos. 2, 33, 37). Regardless, the Tribunal unmistakably based its authority to make these corrections on Rule 36 of the 2017 ICC Rules. (*See* Dkt. No. 4–8).

exceedingly narrow and deferential review of arbitration awards in general. (Dkt. No. 33 at 11–14). GdC argues that changes made in the Addendum Award correct a "computational error," and the Tribunal is entitled to extreme deference on the interpretation of its power, including what constitutes a "computational error." (*Id.* at 13–17). Finally, GdC maintains that the damages RSM seeks to recover are "completely disconnected" from the contract and therefore fail the "essence" test. (*Id.* at 17–19).

A party seeking to set aside an arbitration award under Section 10(a)(4) "bears a heavy burden," as that provision is no exception to the deferential and narrow review that generally applies to judicial reviews of arbitration awards. *Oxford Health Plans*, 569 U.S. at 569, 133 S.Ct. at 2068. Because arbitration is a matter of contract, one way an arbitrator can exceed their powers is by acting contrary to express contractual provisions. *Rain CII Carbon*, 674 F.3d at 472. "If the contract creates a plain limitation on the authority of an arbitrator, [the reviewing court] will vacate an award that ignores the limitation." *Id.* (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007)). Such limitations must be unambiguous, and a reviewing court must still "resolve all doubts in favor of arbitration." *Id.* (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)).

### 1. Computational Error vs. Merits Re-Do

The present case turns on whether the Tribunal was correcting a computational error when it issued the Addendum Award. If not, the Tribunal acted outside of its authority and the Addendum Award is invalid. After a close examination of exactly what happened in the initial Partial Final Award, the answer is clear.

As previously discussed, RSM claimed $10,578,123.28 in connection with the CHL Royalty. (*See* Dkt. No. 4-2 at 14–34). Of this amount, $6,566,497.38 is attributable to the revenues accrued that RSM did not receive due to the delayed payout. (*Id.* at 18). However, regardless of the correct payout date, RSM sought *other additional damages* whose calculations depended on whether the operative payout date was February 1, 2016, or June 1, 2016. (*See id.* at 18–19, 34–41). RSM claimed that if the Tribunal agreed that February 1, 2016, should be the payout date, RSM should recover an additional $4,011,625.82 in connection with those *other additional damages*. (*See id.* at 18–19). This $4,011,625.82 would, together with the $6,566,497.38, add up to the total claimed $10,578,123.28. RSM also claimed those *other additional damages* based on a June 1, 2016, payout date, but only in the event that the Tribunal decided that RSM was not entitled to the $6,566,497.38. (*Id.* at 34–41).

In making its damages claim in connection with a February 1, 2016, payout date, RSM explicitly listed three components that added up to $10,578,123.28. (*See* Dkt. No. 4-2 at 18–19). RSM's briefing did not ascribe specific claim numbers, including when RSM broke down how it was entitled to recover $10,578,123.28. (*Id.* at 14–34). The Tribunal's Partial Final Award, however, categorized that sum under what it titled "RSM Claim No. 1: GdC's Inclusion of the CHL Royalty in the Calculation of 'Payout.'" (Dkt. No. 4-1 at 40). That title is, perhaps, misleading. After all, RSM sought more than the revenue accrued from February 1, 2016, through May 31, 2016; that revenue was only the first of three steps, and the latter two steps were *other additional damages* based on a February 1, 2016, payout date. (*See* Dkt. No. 4-2 at 18–19). However, while the Tribunal did consider

12

the $6,566,497.38 from the first step, it did not stop there. As discussed earlier, the Tribunal noted that "the proper amount due to the Joint Account with a Payout date of February 1, 2016" is "accomplished in three steps[.]" (Dkt. No. 4-1 at 60). The Tribunal explicitly endorsed RSM's proposed step two calculation, "in accord with Article 3.5 of the Farmin Agreement." (*Id.*). On the second step, the Tribunal determined that "the Joint Account should be credited with sales proceeds received from February 1, 2016[,] for petroleum that was delivered prior to February 1, 2016." (*Id.*). In accordance with this conclusion, the Tribunal offered a comprehensive breakdown as to how this amount came to be $3,866,616.70. (*Id.* at 60–61).

Then, the Tribunal similarly endorsed the third and final component of RSM's calculations, explaining that "the Joint Account must be credited for sales proceeds received in January 2016 after GdC achieved 100% cost-recovery, but before the February 1, 2016, date of Payout." (*Id.* at 61). Like with the second step, the Tribunal offered a comprehensive breakdown as to why this amount was $145,009.20. (*Id.*). Moreover, in discussing Claim Nos. 2 and 3, the Tribunal noted that it had already "determined that RSM would be entitled to its 40% share of *all* revenues from the date of Payout (or cost-recovery), regardless of when that revenue accrued." (*Id.*) (emphasis added).

To summarize, RSM sought a payment of $10,578,123.28 and that sum had three components. While the Tribunal arguably *titled* RSM's bid for that sum as only one of those three components, (*see* Dkt. No. 4-1 at 40), the *substance* of its decision expressly determined that RSM was entitled to recover on each of the three components that made up the $10,578,123.28 award. (*See id.* at 60–61).

Subsequently, at GdC's urging, (*see* Dkt. No. 4-5), the Tribunal issued an Addendum Award wherein the Tribunal determined that it "erroneously computed the CHL Royalty damages for Claim No. 1 by factoring two calculations that the claim did not encompass, thus miscalculating the appropriate relief due to RSM in respect of its Claim No. 1." (Dkt. No. 4-8 at 18). This characterization is incorrect, as the Tribunal conflates the *title* of its original decision with its *substance*. The argument GdC advanced was that the Partial Final Award should not have included the second and third components of the total $10,578,123.20 because the title of "Claim No. 1" reflected only the first component. (*See* Dkt. No. 4-5 at 3). The Tribunal agreed with GdC. (Dkt. No. 4-8 at 18).

The Parties agree that the Tribunal cannot modify the substance of its otherwise final rulings, or that their authority to revise such a ruling is limited to corrections of computational errors. (*See generally* Dkt. Nos. 2, 33, 37) (containing no discussions of any other grounds for the Tribunal to modify its award). In this case, a careful review of RSM's claims and the Tribunal's Partial Final Award reveals that the Tribunal has committed a textbook case of reversing course on a substantive legal issue it previously decided. The Tribunal explicitly determined that RSM should prevail as to the second and third components of the full $10,578,123.20 sum, and then un-did that determination under the guise of a computational error.

According to GdC, the Tribunal awarded damages for "completely separate claims" for which it "did not find in favor of RSM[.]" (Dkt. No. 33 at 14). If this were

14

true, GdC's position would be more persuasive.[5] But that characterization of the Partial Final Award is patently inconsistent with its substance. RSM specifically broke down each of the three components that added up to $10,578,123.20, (*see* Dkt. No. 4-2 at 18–19), and the Tribunal unmistakably determined that RSM was entitled to each component, (*see* Dkt. No. 4-1 at 60–61). Therefore, what the Tribunal chalked up to a "miscalculation" was not a miscalculation at all, but rather a re-calculation in the Addendum Award. The Tribunal did not award damages for two calculations that it had not decided; the Tribunal had decided, and determined that RSM prevailed, on *each and every component* of RSM's bid for the full $10,578,123.20. (*See* Dkt. No. 4-1 at 60–61).

In reviewing the substance of the Tribunal's Partial Final Award, the Court cannot conclude, even when giving tremendous deference to the Tribunal, that the Tribunal issued the Addendum Award in accordance with its authority to correct computational errors. As courts that have explored the issue have made clear, this case involves modifications that far exceed clerical or computational errors. In many instances where courts found a computational error, the determination was quite straightforward. *See, e.g., Martel v. Ensco Offshore Co.*, 449 F.App'x 351, 354 (5th Cir. 2011) (per curiam) (permitting an amended award because it involved "a clerical error" where the arbitrator had forgotten a zero, originally basing the calculation on a figure of $300,000.00 instead

---

[5] Under this characterization of the Tribunal's decision, the Partial Final Award would have never opined at all on the second and third components of the full $10,578,123.20 sum. The Tribunal would have only considered the first component ($6,566,497.38) before holding that RSM should fully prevail, to the tune of $10,578,123.20—an amount which reflects that RSM prevailed on the second and third components as well.

of $3,000,000.00); *Chase v. Cohen*, 519 F.Supp.2d 267, 280 (D. Conn. 2007) (permitting a change to the original award which had inadvertently referred to "Rhoda Chase" instead of her daughter, "Cheryl Chase."). On the other hand, courts have consistently vacated awards under Section 10(a)(4) when the arbitrator re-visited their determinations of legal issues. *See, e.g.*, *Credit Agricole Corp. & Inv. Bank v. Black Diamond Cap. Mgmt., LLC*, No. 1:18-CV-07620, 2019 WL 1316012, at *8 (S.D.N.Y. Mar. 22, 2019) (holding that the changes in the calculation method were not merely "computational error"); *T. Co. Metals LLC v. Dempsey Pipe & Supply, Inc.*, No. 1:07-CV-07747, 2008 WL 11512391, at *4 (S.D.N.Y. July 8, 2008) (determining that the amended award, issued in accordance with the arbitrator's own purported oversights in accurately calculating the award, was based in impermissible re-interpretations of the record).

The Tribunal unmistakably concluded, in the Partial Final Award, that RSM was entitled to damages with respect to the second and third components of the $10,578,123.20. The Tribunal effectively reversed that determination in the Addendum Award by holding that RSM was not entitled to those damages. (*Compare* Dkt. No. 4-1 at 60–61 *with* Dkt. No. 4-8 at 20). The original award had no "evident material miscalculation of figures," and the Tribunal plainly re-determined a substantive issue of law. *See Credit Agricole*, 2019 WL 1316012 at *8. The Court therefore finds that the Tribunal exceeded its authority by modifying the award in a way forbidden by the plain text of the agreement. *See Smith v. Transp. Workers Union of Am., AFL-CIO Air Transp. Loc. 556*, 374 F.3d 372, 375 (5th Cir. 2004) (explaining that a presumption in favor of arbitrability cannot be stretched so as to permit disregard or modification of the

16

agreement). The Court vacates the portion of the Addendum Award that removed $4,011,625.90 from RSM's damages.

### 2. The Essence Test

The essence test provides that a court will sustain an arbitrator's award so long as the decision "draws its essence" from the contract, i.e., has not "utterly contorted the evident purpose and intent of the parties[.]" *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802–03 (5th Cir. 2013). This test looks at whether the decision is based on the contract's terms, or instead is a simple reflection of "the arbitrator's own notions of industrial justice." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S.Ct. 462, 466, 148 L.Ed.2d 354 (2000) (quoting *Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)).

In light of the Court's determination that the Tribunal acted in excess of its authority in issuing the Addendum Award, the Court need not consider the Parties' arguments as to whether the Tribunal's decisions drew their essence from the Parties' contractual terms.[6]

### C. CONFIRMATION OF THE OTHER RULINGS

The Tribunal decided that its computational correction as to RSM's Claim No. 1 "raise[d] the matter of a proper resolution of RSM's Claim Nos. 2 and 3." (Dkt. No. 4-8 at 19). In light of the Court's holding that the Tribunal's decision in the Addendum

---

[6] Both Parties' essence test arguments boil down to re-hashing whether the Tribunal's legal analysis led to the correct conclusion, which in any event is not proper grounds for vacating an arbitration award. *See Oxford Health Plans*, 569 U.S. at 569, 133 S.Ct. at 2068.

Award as to Claim No. 1 was in excess of the Tribunal's authority, the Court also finds that the Tribunal's Addendum Award should be vacated with respect to its determinations on Claim Nos. 2 and 3, which are moot.[7]

Finally, RSM asks the Court "to confirm the remaining portions of the [Partial Final Award] and Addendum Award." (Dkt. No. 2 at 28). "Under the FAA, courts 'must' confirm an award unless the award is vacated under Section 10 or modified or corrected under Section 11." *Cooper*, 832 F.3d at 544 (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S.Ct. 1396, 1402, 170 L.Ed.2d 254 (2008)). Because the Court finds that the Addendum Award is improper with respect to its determinations as to RSM's Claim Nos. 1–3, those portions of the Addendum Award are vacated. However, the Addendum Award is confirmed with respect to the remaining portions. (Dkt. No. 4-8 at 7). Likewise, the unchallenged portions of the Partial Final Award are confirmed.

## IV.   CONCLUSION

Considering the foregoing analysis, the Court **GRANTS** RSM's Motion to Partially Vacate and Partially Confirm Arbitration Award, (Dkt. No. 2). The Court hereby **VACATES** the portion of the Addendum Award that reduced RSM's recovery by $4,011,625.90 in damages previously awarded in the Partial Final Award. All remaining

---

[7] The Court notes that Claim Nos. 2 and 3 were made in the alternative because they sought damages in connection with a June 1, 2016, payout date in the event the Tribunal rejected their argument that the proper payout date was February 1, 2016. Because the Tribunal found that February 1, 2016, was the proper payout date in the Partial Final Award—and the Addendum Award did not disturb that finding—Claim Nos. 2 and 3 remain moot.

portions of the Addendum Award and Partial Final Award not vacated are hereby **CONFIRMED**.

RSM is **ORDERED** to submit a proposed final judgment that conforms with this ruling by November 17, 2023.

It is SO ORDERED.

Signed on November 4, 2023.

                                        */s/ Drew B. Tipton*
                                        **DREW B. TIPTON**
                                        **UNITED STATES DISTRICT JUDGE**